| | |
|---|---|
| SCHNEIDER ENTERPRISE RESOURCES, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>CALBIO HOLDCO LLC,<br><br>          Defendant. | Case No. _____<br><br>**COMPLAINT** |

Plaintiff Schneider Enterprise Resources, LLC ("Schneider"), by and through its attorneys, Foley & Lardner LLP, for its Complaint against Defendant CalBio Holdco LLC ("CalBio"), alleges as follows:

### NATURE OF THE ACTION

1. This is an action for breach of contract based on Defendant's failure to honor its obligations under the parties' Tax Credit Transfer Agreement ("Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

### PARTIES

2. Schneider is a limited liability company organized under the laws of Wisconsin. Schneider's sole member is Schneider National Leasing Inc., a corporation organized under the laws of Nevada, whose principal place of business is in Wisconsin.

3. CalBio is a limited liability company organized under the laws of Delaware. Based on public records of the California Alternative Energy and Advanced Transportation Financing Authority, CalBio identified its members as JRBM Renewables, LLC ("JRBM"), Unigy Holdings, LLC ("Unigy"), Go Ventures, LLC ("Go Ventures"), and BGTF Citrus Common Holdings LLC

("BGTF"). Based on publicly available information, JRBM is a limited liability company organized under the laws of California, and its sole member is an individual named John B. Bidard, who is domiciled in California. Based on publicly available information, Unigy is a limited liability company organized under the laws of Texas, and its sole member is an individual named Nicholas Ross Buckenham, who is domiciled in Texas. Based on publicly available information, Go Ventures is a limited liability company organized under the laws of Delaware, and its sole member is an individual named Andrew Shapiro, who is domiciled in New York. Based on publicly available information, BGTF is a limited liability company organized under the laws of Delaware, and its ultimate owner appears to be Brookfield Corporation, a publicly traded Canadian corporation. Thus, based on publicly available information and belief, no member of CalBio is a citizen of Wisconsin or Nevada.

### JURISDICTION & VENUE

4.      The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the matter in controversy exceeds $75,000, exclusive of interest and costs.

5.      This Court has personal jurisdiction over Defendant because, among other things, Defendant has consented to "submit to the exclusive jurisdiction of the courts, federal or state, within the County of New York in the State of New York in connection over any dispute arising out of or relating to this Agreement." (Ex A, § 9.7(b)).

6.      Venue is proper based on 28 U.S.C. § 1391(b)(3) because Defendant has consented to exclusive jurisdiction in the state and federal courts of New York, New York and has waived

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████ (*Id.*)

-2-

## FACTUAL ALLEGATIONS

7. ████████████████████████████████████████████████ ████████████████████████████████, described in the Agreement ("Projects"). These Projects are ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ (the "ITCs").

8. Pursuant to Section 6418 of the Code, ████████████████████████████ ██████████████████████ for which the Projects qualify to an unrelated transferee.

9. Schneider and CalBio entered into the Agreement, dated December 20, 2024, pursuant to which ████████████████████████████████████ ████████████████████████████████████████████████ (Ex A, § 2.2).

10. The parties agreed that ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ (*Id.*)

11. Since the final amount of the ITCs to be transferred could change based on valuation of the Projects and various qualifications and other calculations done by third parties, the Agreement provided in Section 2.7 that ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████ (*Id.*, § 2.2). Section 2.7 was not intended to apply to situations where ████████████ ████████████████████████████████

4905-4096-4998

12. Under the Code, ITCs are subject to recapture by the Internal Revenue Service ("IRS") in the event that it is determined, during the five-year period starting from the date on which investment credit property is placed in service for U.S. federal income tax purposes, that such investment credit property is disposed of, or otherwise ceases to be investment credit property with respect to the taxpayer, during the recapture period. The Agreement provided that, ███

███

███

███

███

███

(Ex A, § 5.1).

13. In Section 5.1 of the Agreement, ███

███

███

(Ex. A, § 5.1). The Agreement defines ███

███

14. Section 5.4 of the Agreement further provides that ███

███

███

███ (Ex A, § 5.4).

15. The Agreement also provided that ███

███

4905-4096-4998

_____ (Ex A, § 9.13).

16. In light of CalBio's limited financial ability to pay such an ████████ as determined by Schneider based on its review of CalBio's financial statements, the parties also agreed in the Agreement that ████████████

17. The parties agreed that ████████████

(Ex A, § 2.4).

18. The Agreement is ████████ (Ex A, § 9.7(a)).

19. On March 31, 2025, Schneider and CalBio executed a letter agreement (the "March 31 Letter Agreement") ████████ A true and correct copy of the March 31 Letter Agreement is attached hereto as **Exhibit B**. ████████

████████ as agreed by the parties. The March 31 Letter Agreement provided that ████████

4905-4096-4998

20. The March 31 Letter Agreement expressly states that, ███████████ ████████████████████████████████████████████████████ (Ex B, p. 2). Accordingly, ██████████████████████████████████ ████████████████████████████████████████ ██████████████████████ as set forth in the Agreement.

21. Project K is identified in the Agreement as ██████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ (Ex. A, p. 2, first "Whereas").

22. On June 19, 2025, ████████████████████████████████ ████████████████████████████████████ As a result of ████████ ████████████ CalBio would be unable to ███████████████████████ ██████████████████████████████████████████████████ ████████████████████ Schneider and CalBio nonetheless sought to modify the Agreement to preserve ██████████████████████████████ the ITCs from Project K once provisions had been made for ████████ of Project K.

23. On June 30, 2025, the parties executed a letter agreement (the "June 30 Letter Agreement") to ████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████ A true and correct copy of the June 30 Letter Agreement is attached hereto as **Exhibit C**.

4905-4096-4998

24. The closing of the transfer of ITCs for Project C, Project D, Project F, Project H, Project I, Project J, and Project L as well as the Domestic Content ITCs from Project A, Project B, Project E and Project G did take place on June 30, 2025, as the parties agreed. As of that Second Closing Date under the Agreement, ███ ████████████████████████

████████████████████████████████████

███████

25. Pursuant to the June 30 Letter Agreement, the parties agreed that ████████

████████████████████████████████████

Having a closing in September 2025 ██████████████████ was important███████████

████████████████████, and CalBio and Schneider had to file their respective tax returns for their 2024 taxable years starting on September 15, 2025, and would need to have ███████

█████████████████████████ as required under Section 6418 of the Code.

26. In the June 30 Letter Agreement, the parties also agreed that████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████ (Ex C, § 2(a)).

27. Because of██████████████████, the parties understood that there would be uncertainty whether Project K would remain in service, as required by the Code, or could be considered to have been taken out of service for U.S. federal income tax purposes, the latter of which would create a substantial risk that██████████████████ could be recaptured by the IRS after they██████████████.

28. While the Agreement and the June 30 Letter Agreement require ████████

████████████████████████████████████

4905-4096-4998

███████ Schneider did not believe that CalBio had the financial wherewithal to pay ███

████████████████████ that would arise if the IRS determined that ████████████

████████████████████████████████████████

████ Further, Schneider believed there was a substantial risk whether the existing ████████

████████████████████████████████████████

████████████████████ would cover such a recapture.

29. Nonetheless, it remained desirable to both parties to find a way to still transact on the Project K ITCs. To that end, the parties agreed in the June 30 Letter Agreement that, ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████ One of the conditions precedent to ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████ The purpose of the ████████████████████

████████████████████ was to mitigate the risk that CalBio would be financially unable to ████████████████████ in the event that the Project K ITCs were disallowed by the IRS.

4905-4096-4998

30.     The June 30 Letter Agreement goes on to provide for the ███████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████ (Ex C, § 3(b)).

31.     The June 30 Letter Agreement makes clear that █████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████ (Ex. C, § 4(a)).

32.     The June 30 Letter Agreement also amended Section 2.7 of the Agreement to

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

(Compare Ex. A, § 2.7 and Ex. C, § 4(b)).  The June 30 Letter Agreement provided that ██████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

Just like Section 2.7 in the Agreement, Section 4(b) in the June 30 Letter Agreement was intended

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ Section 4(b) in the

June 30 Letter Agreement was not intended to cover a situation where ██████████████████

████████████████████████████████████ , as agreed.

33.     The June 30 Letter Agreement also increased ████████████████████

████████████████████████████████████████████████████████████████████

4905-4096-4998



Ex. C, § 4(c).

34. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ were identified as conditions precedent to ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ (Ex C, § 2(b)). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*)

35. Following execution of the June 30 Letter Agreement, the parties proceeded to work with their respective advisers on the fulfillment of the conditions to closing of the Project K ITCs transfer.

36. If CalBio acted in good faith to fulfill its obligations to consummate the transactions described in the Agreement, as amended by the June 30 Letter Agreement, the parties could have negotiated a separate structure to avoid ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ if Project K did not become operating as of the time of tax filing.

37. Indeed, under Section 6.2(b) of the Agreement, ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex A, § 6.2(b)). This obligation would include efforts to ▮▮▮▮▮▮▮▮▮▮▮▮ pursuant to the June 30 Letter Agreement.

38. Between June 30, 2025 and August 15, 2025, the parties held recurring conference calls to discuss their work with their advisors and the progress towards the satisfaction of ▮ ▮▮▮▮▮▮▮▮ set forth in the June 30 Letter Agreement. At no time during those calls did CalBio indicate that it would be unable to ▮▮▮▮▮▮▮▮

4905-4096-4998

████████████████████████████████████████████ in the June 30 Letter Agreement. During those calls, the parties discussed the selection of an ███████████ to facilitate ███████████ █████████████ and would have easily settled on a mutually acceptable ███████████ and negotiated █████████████████████████████ but for CalBio's repudiation of its obligations under the June 30 Letter Agreement.

39.    On August 7, 2025, at the request of CalBio's counsel (McGuire Woods LLP), both parties' counsel held a conference call to discuss concerns that McGuire Woods had regarding the ██████████████████—that the IRS might not respect the payment of ████████████████████ ██████████████████████████████████████ Despite CalBio having already agreed to ██████████████████ in the June 30 Letter Agreement, which expressly addressed the specific risk identified by CalBio's counsel through the ███████████████████ ████████████ CalBio's counsel asked during that call whether Schneider would instead accept a creditworthy parent guaranty, letter of credit or other credit support (in lieu of ███████████ ████████████) to ensure payment of ███████████████████████ in the event of a recapture ████████████████████████████████ Schneider's counsel indicated that it believed Schneider would be receptive to alternative credit support and invited CalBio to provide a specific proposal; however, at no time after that conference call did CalBio or McGuire Woods make any such proposal.

40.    During an August 15, 2025 status call between the parties, CalBio indicated that it was proceeding toward the satisfaction of the conditions for the closing of the Project K ITCs transfer and proposed that the closing occur sometime during the following week of August 18, 2025.

4905-4096-4998

41. However, on August 16, 2025, CalBio, through its advisor Mark Mickelson, sent Schneider an email, stating among other things, that: "CalBio's board has made the decision not to proceed with the [Project K ITC] transfer." No explanation for that decision was given in Mr. Mickelson's email. A true and correct copy of the August 16, 2025 email from Mr. Mickelson is attached hereto as **Exhibit D**.

42. In his email, Mr. Mickelson also made a reference to ███████████████ ████████████████████████████████████████████ (*Id*). Mr. Mickelson stated that ████████████████████████ under the Agreement, ████████████████████████████████, and Mr. Mickelson said ██████ plans to make the remaining payment.

43. In his email, Mr. Mickelson also stated that ██████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████ Mr. Mickelson said ████████████████████████ ████████

44. Following receipt of CalBio's August 16, 2025 email, Schneider demanded that CalBio proceed to closing of the Project K ITCs transfer, as set forth in the June 30 Letter Agreement. CalBio refused and instead demanded a renegotiation of the terms for the closing of the Project K ITCs transfer. CalBio acted willfully to prevent ████████████████ ████████ on the terms agreed by the parties in the June 30 Letter Agreement.

45. On and as of September 8, 2025, Schneider was ready, willing, and able to perform its contractual obligations in the June 30 Letter Agreement: ████████████████

-12-

4905-4096-4998

████████████████████████████████████ in accordance with the June 30 Letter Agreement's terms.

46. CalBio did not ████████████████████████████████████ ████ as required. Instead, CalBio advised Schneider on November 7, 2025 that CalBio used the Project K ITCs itself.

47. CalBio did not use reasonable efforts to consummate the ████████████████ such as attempting to negotiate and enter into ████████████████████████ ████████████████████████████, though it represented to Schneider as recently as the day before Mr. Mickelson's email that it was progressing toward the Project K ITCs transfer closing.

48. Schneider, through counsel, sent a letter to CalBio on September 29, 2025, demanding that CalBio ████████████████████████████████ arising out of CalBio's breach of the Agreement, including ████████████████████████ ████████████

49. To-date, CalBio has refused to honor its obligations under the Agreement, including the obligation to indemnify Schneider on an after-tax basis for all losses resulting from CalBio's breach of the Agreement.

## COUNT I
### (LIQUIDATED DAMAGES AND FEES REIMBURSEMENT FOR BREACH OF CONTRACT)

50. Schneider repeats and re-alleges each and every allegation contained in the preceding paragraphs in this Complaint, and incorporates them herein by reference.

51. The Agreement, as amended by the March 31 Letter Agreement and the June 30, 2025 Letter Agreement, represents a valid, binding, and enforceable contract between Schneider and CalBio.

-13-

4905-4096-4998

52. CalBio repudiated the contract by stating its intention not to ███████.

53. CalBio made the repudiation final by failing to ███ the Project K ITCs on September 8, 2025.

54. Schneider was willing and able to perform its obligations on September 8, 2025.

55. CalBio's refusal to ███ the Project K ITCs and failure to perform by September 8, 2025, constitute a material breach of contract.

56. In Section 2.7 of the Agreement, as amended by Section 4(b) of the June 30, 2025 Letter Agreement, CalBio agreed to ████████████████████ ████████████.

57. CalBio ████████████ under the Agreement, making the shortfall equal to ████████.

58. CalBio was obligated to ████████████ ███ and failed to do so.

59. Pursuant to Section 9.13 of the Agreement, as amended by Section 4(c) of the June 30, 2025 Letter Agreement, CalBio is obligated to ████████████ ████████████ ████████.

60. Schneider has ████████████ ████████████ ████████ To-date, CalBio has only ████████ and CalBio is thus responsible to ████████ pursuant to Section 9.13 of the Agreement, as amended by Section 4(c) of the June 30, 2025 Letter Agreement.

-14-

## SECOND CAUSE OF ACTION (ALTERNATIVE TO FIRST CAUSE OF ACTION)
### (ACTUAL DAMAGES AND INDEMNIFICATION FOR BREACH OF CONTRACT)

61. Schneider repeats and re-alleges each and every allegation contained in the preceding paragraphs 1 through 49 in this Complaint, and incorporates them herein by reference.

62. The Agreement, as amended by the March 31 Letter Agreement and the June 30, 2025 Letter Agreement, represents a valid, binding, and enforceable contract between Schneider and CalBio.

63. CalBio repudiated the contract by stating its intention not to ███████████████

64. CalBio made the repudiation final by failing to ██████ the Project K ITCs on September 8, 2025.

65. Schneider was willing and able to perform its obligations on September 8, 2025.

66. CalBio's refusal to ██████ the Project K ITCs and failure to perform by September 8, 2025, constitute a material breach of contract.

67. The Agreement requires CalBio "███████████████████████ ████████████████████████████████ ██████████████████████ (Ex A, § 6.2(b)).

68. CalBio's active refusal to take "████████████████████████ of the Project K ITCs, including, but not limited to, (1) the ██████ of the Project K ITCs to Schneider and (2) the satisfaction of the conditions precedent set forth in Sections 2(b)(i)-(vii) of the June 30 Letter, which were ████████████████, breached express covenants.

69. Section 2.7 of the Agreement, as amended by Section 4(b) of the June 30, 2025 Letter Agreement, was intended to apply when ███████████████████ ████████████████████████████████ ██████████ Section 2.7 of the Agreement, as amended by Section 4(b) of the June 30, 2025

-15-

4905-4096-4998

Letter Agreement, was not intended to cover a situation where ██████████████ ██████████████████████████ as agreed. Thus, Section 2.7 of the Agreement, as amended by Section 4(b) of the June 30, 2025 Letter Agreement, does not apply here.

70. The ████████████ provision in Section 2.7 of the Agreement, as amended by Section 4(b) of the June 30, 2025 Letter Agreement, is unenforceable as a penalty or otherwise.

71. As a direct, proximate, and foreseeable result of CalBio's breach, Schneider has been, and continues to be, damaged in an amount of ██████████ at least $1,256,137, to be ██████████████████████ , plus costs, legal fees and expenses, plus interest accrued and continuing to accrue—all of which CalBio must ████████████ , as set forth in Sections 5.1 and 5.4(f) of the Agreement. (Ex. A, §§ 5.1. 5.4).

### THIRD CAUSE OF ACTION (ALTERNATIVE TO FIRST CAUSE OF ACTION)
### (ACTUAL DAMAGES AND INDEMNIFICATION FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

72. Schneider repeats and re-alleges each and every allegation contained in the preceding paragraphs 1 through 49 in this Complaint, and incorporates them herein by reference.

73. Under New York law, all contracts contain an implied covenant of good faith and fair dealing.

74. CalBio's refusal to work with Schneider to identify an alternative to ██████████ ██████████ (if CalBio had doubts about the latter) and to close on the transfer of Project K ITCs, coupled with CalBio's failures to raise any concerns about the structure chosen by the parties, as set forth in the June 30 Letter, and CalBio's sudden refusal to ██████████████ ██████████ , as set forth in CalBio's August 16 email, constitutes a breach of the implied covenant of good faith and fair dealing.

75. Section 2.7 of the Agreement, as amended by Section 4(b) of the June 30, 2025 Letter Agreement, was intended to apply when ████████████████

-16-

█████████ Section 2.7 of the Agreement, as amended by Section 4(b) of the June 30, 2025 Letter Agreement, was not intended to cover a situation where ████████████████ ████████████████████████ as agreed. Thus, Section 2.7 of the Agreement, as amended by Section 4(b) of the June 30, 2025 Letter Agreement, does not apply here.

76. The ████████████ provision in Section 2.7 of the Agreement, as amended by Section 4(b) of the June 30, 2025 Letter Agreement, is unenforceable as a penalty or otherwise.

77. As a direct, proximate, and foreseeable result of CalBio's breach of the implied covenant of good faith and fair dealing, Schneider has been, and continues to be damaged in an amount of ████████████ at least $1,256,137, to be ██████████████████████ █████, costs, legal fees and expenses, plus interest accrued and continuing to accrue—all of which CalBio must ████████████████ as set forth in Sections 5.1 and 5.4 of the Agreement. (Ex. A, §§ 5.1. 5.4).

## PRAYER FOR RELIEF

WHEREFORE, Schneider demands judgment as follows:

A. Awarding Schneider compensatory damages because of CalBio's breach of contract;

B. Ordering CalBio to ████████████████████ (as defined in the Agreement) sustained by Schneider as a result of CalBio's breach of the Agreement's express and implied covenants;

C. Awarding Schneider pre-judgment and post-judgment interest at the maximum rate allowed by law;

D. Awarding Schneider the costs of suit as incurred in this action and attorneys' fees; and

E. Awarding Schneider all other and further relief as the Court deems just and proper.

4905-4096-4998

Dated: March 2, 2026

FOLEY & LARDNER LLP

By: _____

Sara P. Madavo

Max B. Chester, Pro Hac Vice Forthcoming
Arata E. Kaku-McGowan, Pro Hac Vice Forthcoming
777 E Wisconsin Ave
Milwaukee, WI 53202-5306
Telephone: 414.271.2400
Facsimile: 414.297.4900
mchester@foley.com
arata.kaku-mcgowan@foley.com

Sara P. Madavo
FOLEY & LARDNER LLP
90 Park Ave
New York, NY 10016
Telephone: 212.338.3582
Facsimile: 212.687.2329
smadavo@foley.com

*Attorneys for Plaintiff*
*Schneider Enterprise Resources, LLC*

-18-